FARRIS v. CASTOR.

*99 P. 2d 900.*

No. 29141.   Jan. 16, 1940.

Rehearing Denied Feb. 27, 1940.

Application for Leave to File Second Petition for Rehearing Denied March 12, 1940.

Mathers & Mathers and Bob Howe, all of Oklahoma City, for plaintiff in error.

Chandler, Shelton & Fowler, John W. Swinford, and Edgar S. Vaught, Jr., all of Oklahoma City, for defendant in error.

BAYLESS, C. J. Effie Farris appeals from the ruling of the district court of Oklahoma county sustaining a demurrer to her evidence, introduced in an effort to recover damages against Beatrice Castor.

Castor had a judgment in a justice of the peace court of Oklahoma county against Joe Farris, the father of Effie. An execution was issued on the judgment and levied upon certain personal property, as the property of the judgment debtor, but which was later found to be the property of Effie. Effie then procured the release of the property and sued for damages. At the close of the plaintiff's evidence the defendant demurred and the demurrer was sustained.

We are of the opinion the trial court erred in sustaining the demurrer. Plaintiff has assigned a number of errors, but only argues two propositions. These are rather broad in their scope and the defendant's answer to them is likewise. Plaintiff argues that it was error to sustain the demurrer, and we have said we agree.

The consideration we give the record is governed by the rule stating the effect of a demurrer. When a defendant interposes a demurrer to the evidence of the plaintiff, the defendant thereby admits the truth of all of the evidence introduced by the plaintiff and all inferences and conclusions which may be reasonably and logically drawn from the evidence introduced. Section 359, Okla. St. 1931, 12 Okla. St. Ann. § 577, subd. 3, and cases annotated under notes 11-40.

The evidence disclosed this: That plaintiff rented a lot and paid for the erection thereon of a small building, and bought and paid for the merchandise. She took the necessary licenses in her name, and paid the sales taxes. The neighboring businessmen understood she was owner. The constables went to the place of business armed with the execution and found plaintiff's father in charge, and asked to see the owner, and the father thereupon represented himself as such. As soon as he was apprised of the visitors' official position and their purpose, he changed his position with reference to the ownership of the store. The constables thereupon assumed charge of the place and began and completed an inventory of the stock of merchandise and fixtures. In the meantime, plaintiff appeared and represented herself to the constables as the owner and demanded they desist. Upon their refusal, she left and returned with her attorney. Several persons became interested and came in or were called, and advised the constables that the daughter and not the father was the owner. The constables communicated the news of the levy to defendant, and she agreed to send a truck to haul the goods levied upon away. The constables also advised the justice from whose court the writ issued, and after the officers had been in charge for some two or three hours they left. There was considerable testimony pro and con as to whether the constables permitted sales during the time they were in charge, and their version is they did, but insisted upon the proceeds being deposited in the cash drawer. Some proceedings were then had in the justice of

the peace court, with plaintiff herein as intervener, wherein it was determined that plaintiff was the owner of the property seized. The trial judge refused to admit in evidence these proceedings. We do not know whether he did so on the theory they were inadmissible on some rule of evidence or because the plaintiff seemed to admit the judgment there was not binding and conclusive.

The journal entry of judgment does not disclose the precise points in the trial judge's consideration in deciding the evidence was insufficient to sustain the plaintiff's cause of action. The judge did address certain remarks to the jury in explanation of why he adjudged the evidence insufficient. There is some reference in the record and briefs to these remarks being findings of fact and conclusions of law, although they are not incorporated in the record as such. These remarks are no part of the judgment and are not binding upon us in our endeavor to define the factors involved in the trial judge's decision; but they are useful to us insofar as they indicate any of the notions entertained by the trial judge.

From one of the remarks the trial judge entertained the view that no levy was made. He said:

"When it was called to their (the constables') attention that somebody else claimed to be the owner of it, they quit and left the property substantially the same as it was. They did not take the keys to the place; they did not take any of the property. They went off and left it in the hands of these people. There is no evidence here to show that the defendant, Mrs. Castor, who had the judgment, had any direction at all over the activities of these constables. That does not constitute a levy in contemplation of law. The possession of the plaintiff here, if she is the owner of the property, was not in any manner substantially disturbed by any act of this defendant, under this evidence."

It can be seen that the court doubted the evidence was sufficient to justify submitting the issue of ownership to the jury or that it was sufficient to sustain a jury's verdict in favor of the plaintiff.

On either theory, the court's decision was wrong. It is our opinion that there was sufficient evidence to require the submission of the issue to the jury, and to sustain a verdict in favor of plaintiff on that issue.

The court likewise doubted that the plaintiff's evidence showed that a levy had been made. Our statutes specify the contents of an execution that shall be issued by a justice of the peace, section 994, Okla. St. 1931, 39 Okla. St. Ann. § 283; but other than specifying that it shall be collected out of the personal property of the debtor, there are no directions with respect to the manner or method of making the levy upon the property found and subjected to the levy. However, as is said in 36 C. J. 1032, sec. 2B "A levy, as applied to writs, is a word with a well-defined meaning," and "In its original sense, an actual making the money out of the property; the obtaining of money by seizure and sale of property. In its secondary sense, seizing the property preliminary to making the money out of it. * * *" The annotations on the quoted text and the text following the quotations make it obvious that a levy is made when property is seized by virtue of the authority of a writ of execution. 23 C. J. 430; Words & Phrases, Levy, Writs; 21 Am. Jur. 58, §§ 107 et seq., and the cases cited thereunder. In 21 Am. Jur. 58, § 107, it is said:

"In regard to a levy of execution upon personal property, the law generally does not prescribe any special or detailed methods of procedure. Assuming the authority of an officer to make a levy of execution upon personal property to be complete, the question of what constitutes a valid levy thereon seems to depend upon the combined results of the circumstances of each particular case, rather than upon the existence or nonexistence of any one circumstance which properly may, or usually does, accompany, evidence, or form a part of, the act of making a levy. In general, it may be said that to constitute a valid levy of execution upon personal property, the officer must interfere with the possession of the property in such a manner that he would be amenable to an action for

trespass were it not for the protection afforded him by the writ."

In section 108, it is said:

"In order to constitute a valid levy * * * there must be an intent upon the part of the officer to control the property. * * * The officer must, in addition, have the power to control the property or to exercise dominion over it at the time of the attempted levy."

In section 110, it is said:

"In most jurisdictions, it is essential to the completion of a levy of execution upon personal property that there be a seizure, either actual or constructive."

This text is followed by the mention of the various things that will constitute seizure, actual or constructive. It is said in section 111 that the endorsement of the officer upon the writ is not indispensable to the validity of the seizure, although the commands of the statutes usually require a return. See McBrien v. Harris, 39 Ga. App. 41, 145 S. E. 919, and many other cases.

What we have said relates to the elements of a valid levy, a complete levy, a sufficient levy by which the officer establishes legal custody. The presence of the elements discussed renders the seizure by virtue of the writ complete and effectual, provided it is the debtor's property that is seized.

The authorities dealing with the subject of damages for wrongful execution are unanimous that a wrongful levy has been made when there has been done to a third person's personal property those acts that would constitute a valid and complete levy if the debtor's property had been seized. 21 Am. Jur. 311, sec. 651; 23 C. J. 972, sec. 1223. Duff, etc., Co. v. Read, 74 Kan. 730, 88 P. 263; and many other cases cited under Am. Jur., C. J., supra, and Am. Dig. (West) Execution, Key No. 459.

Such being the law, there is no doubt in our mind that the record not only contained sufficient evidence to require submission of the evidence to the jury, but also to sustain a jury's verdict in favor of plaintiff. The officers went to the place of business armed with a writ of execution, they had an intent to levy it upon the particular personal property within their view and control when they supposed it was the judgment debtor's property, they seized it, actually by taking it manually into their hands by disarranging and making an inventory and placing it where it would be convenient when they desired to remove it. They exercised dominion over it by authorizing the father to sell articles while they were in charge, but requiring him to deposit the money in the cash drawer. It seems to us that what they did, and by defendant's demurrer this is admitted, did constitute a levy.

If a jury should determine that plaintiff was the owner, and that the officers did the things charged, under the record before us, it is sufficient in fact and law to constitute a wrongful levy of execution.

The evidence as to the damage suffered is somewhat meager, and the parties have not discussed this phase, with as much stress as is placed on other aspects. In any event, there was a sufficient showing under the effect of the demurrer to establish a wrongful invasion of plaintiff's property rights, and under section 10102, Okla. St. 1931, 23 Okla. St. Ann. § 98, she was entitled to nominal damages even though she was unable to prove actual damages. We do not imply that her evidence was insufficient—we rather think it was sufficient to justify submitting the issue; we only say it was erroneous to instruct judgment against her under the record in the light of the demurrer.

The court likewise doubted that defendant was liable for the acts of the officers because she did not direct them or participate in the acts. This is not the whole test. The execution creditor may ratify such conduct. 21 Am. Jur. 307, sec. 642, note 9; Lundgren v. Western, etc., Bank, 189 Minn. 476, 250 N. W. 1, and the annotation following that decision in 91 A.L.R. 922, and page

672

930 et seq. See our decision in Frick-Reid Supply Co. v. Hunter, 47 Okla. 151, 148 P. 83. If there can be any doubt respecting ratification by adoption on defendant's part when she was informed of the seizure and tendered the truck to haul off the merchandise and fixtures, there can be no doubt she ratified and adopted their acts by contesting plaintiff's claim of ownership in the hearing in the justice of the peace's court. In Frick-Reid v. Hunter, supra, we expressly held that such a contest amounted to a ratification and adoption. In fact, in this very case the defendant is yet denying plaintiff's ownership and is yet asserting her superior rights over plaintiff by virtue of the levy made by the officers.

The other complaints made by plaintiff need not be discussed. If she still desires to dismiss the action when it is remanded, she can call the matter to the court's attention again.

The judgment is reversed and the cause is remanded for further proceedings.

WELCH, CORN, GIBSON, and DAVISON, JJ., concur.